

DA 11-0064

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 203

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JOHN SCOTT CHAUSSEE, JR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-10-1
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Robin A. Meguire, Meguirelaw.com, Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney, Patricia C. Bower,
            Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 22, 2011

Decided:  August 23, 2011

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      This is an appeal from the Fourth Judicial District Court, Missoula County.  The State of Montana charged John Scott Chaussee Jr. with driving under the influence of alcohol (DUI), in violation of § 61-8-401(1)(a), MCA.  The offense, which occurred on or about December 16, 2009, was alleged to be Chaussee's fourth DUI conviction, making it a felony.  *See* § 61-8-731(1), MCA (a person convicted of DUI, who has three or more prior DUI convictions, is guilty of a felony).  Chaussee filed a motion to dismiss, arguing that two of his prior DUI convictions are constitutionally invalid.  The District Court denied the motion.  Chaussee then pleaded guilty, reserving his right to appeal the denial of his motion.

¶2      The issue on appeal is whether Chaussee sufficiently demonstrated that his prior convictions are constitutionally infirm.  We conclude that he did not, and we thus affirm the District Court's denial of his motion to dismiss.  Our review of the District Court's ruling is de novo.  *State v. Burns*, 2011 MT 167, ¶ 17, 361 Mont. 191, ___ P.3d ___.

## BACKGROUND

¶3      Chaussee has three prior convictions of DUI:  1997 in Missoula Municipal Court, 1999 in Darby City Court, and 2008 in Missoula Municipal Court.  He challenged the 1997 and 1999 convictions on the ground that he did not validly waive his right to counsel in either case.

¶4      The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee that in all criminal prosecutions, the accused shall have the fundamental right to the assistance of counsel.  *State v. Howard*, 2002 MT 276,

2

¶ 11, 312 Mont. 359, 59 P.3d 1075. A defendant without means to hire an attorney is entitled to legal representation by court-appointed counsel at public expense. *Howard*, ¶ 11. The defendant may waive the right to counsel. *Howard*, ¶ 12. But, to be valid, any such waiver must be made voluntarily, knowingly, and intelligently. *Howard*, ¶ 12 ("[A]ny waiver of a constitutional right must be made specifically, voluntarily, and knowingly."); *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 15, 353 Mont. 6, 218 P.3d 486 ("[T]he waiver of fundamental constitutional rights must be voluntary, knowing, and intelligent."); *Montejo v. Louisiana*, ___ U.S. ___, 129 S. Ct. 2079, 2085 (2009) ("[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent."); *cf. State v. Main*, 2011 MT 123, ¶ 21, 360 Mont. 470, 255 P.3d 1240 ("A suspect may waive his 5th Amendment rights if such a waiver is made voluntarily, knowingly, and intelligently.").

¶5    In support of his motion to dismiss, Chaussee attached court records relating to the 1997 and 1999 convictions. He asserted that these records contain no indication that he knowingly waived his right to counsel.[1] Chaussee requested an evidentiary hearing on his motion.

¶6    The 1997 record from the Missoula Municipal Court consists of a document entitled "Court Minutes," which has entries dated from March to October of 1997. There

---

[1] A "knowing and intelligent" waiver means that the waiver was " 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Main*, ¶ 21 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)); *see also State v. Blakney*, 197 Mont. 131, 138, 641 P.2d 1045, 1049-50 (1982) ("[A] valid waiver must include not merely a comprehension of the benefits being abandoned, but also an actual relinquishment of those benefits, as evidenced by the actions or statements of the accused.").

is a preprinted statement on the face of the document stating: "defendant appeared, was advised of his constitutional rights, was arraigned, and entered a plea of." The word "not guilty" is handwritten under this preprinted statement. There is a date stamp indicating that Chaussee made his appearance on March 17. Further below, there is a handwritten notation "ASUM" next to the dates March 28 and March 31. ("ASUM" refers to Associated Students of the University of Montana Legal Services.) However, a notation dated April 9 states: "[Defendant] not rep. by ASUM." The District Court reasoned from these notations that "there was a dialogue between the court and the Defendant about his right to an attorney and then, some nine or more days later, a subsequent discussion on the same point followed by a waiver of counsel by the Defendant."

¶7     The 1999 record from Darby City Court includes two single-page preprinted forms containing handwritten information filled in by the court. According to these documents, Chaussee was cited for four offenses: no insurance, dangerous drugs, drug paraphernalia, and DUI second offense. Because the court's preprinted forms were set up to address, at most, two charges per form, the first form in Chaussee's case applied to the no insurance and dangerous drugs charges, and the second form applied to the drug paraphernalia and DUI charges. Both forms are dated October 27, 1999, indicating that Chaussee made his initial appearance on all four charges at the same time. The forms contain a preprinted statement near the top listing the defendant's rights, followed by another preprinted statement: "Do you understand your rights? Yes No." The word "Yes" is circled on the first form, but neither "Yes" nor "No" is circled on the second form. Also, whereas Chaussee's address, phone number, social security number, and employer are written in

4

the appropriate spaces on the first form, this information is omitted from the second form. Further down each form, there is a preprinted statement: "Call an attorney Yes No." The word "No" is circled on both forms. The District Court reasoned, therefore, that although the second form (which applied to the DUI offense) did not have the word "Yes" or "No" circled after the rights portion of the form, Chaussee obviously was advised of his rights "since he appeared on all four citations at the same time and would have been advised of his rights regarding all four cases together rather than repeating the same soliloquy four times."

¶8     Applying the analytical framework set forth in *State v. Okland*, 283 Mont. 10, 18, 941 P.2d 431, 436 (1997), the District Court concluded that Chaussee had failed to meet his initial burden of producing direct evidence that the challenged prior convictions are invalid and, therefore, the presumption of regularity that attaches to prior convictions had not been overcome. The court noted that Chaussee had filed no affidavit stating that he was not advised of his right to an attorney in either of the cases. Thus, because Chaussee had not met his burden of going forward with sufficient direct evidence of invalidity, the District Court ruled that he was not entitled to a hearing on this matter and that the State could use the 1997 and 1999 convictions to support a felony charge of DUI.

## DISCUSSION

¶9     The Due Process Clause of Article II, Section 17 of the Montana Constitution protects a defendant from being sentenced based upon misinformation. *State v. Phillips*, 2007 MT 117, ¶ 17, 337 Mont. 248, 159 P.3d 1078. A constitutionally infirm prior conviction used for enhancement purposes constitutes "misinformation of constitutional

5

magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 592 (1972). Thus, "[i]n Montana, it is well established that the State may not use a constitutionally infirm conviction to support an enhanced punishment." *Okland*, 283 Mont. at 15, 941 P.2d at 434 (citing *Lewis v. State*, 153 Mont. 460, 463, 457 P.2d 765, 766 (1969)).

¶10    We recently reaffirmed these principles in *State v. Maine*, 2011 MT 90, ¶¶ 28, 33, 360 Mont. 182, 255 P.3d 64. *See also Burns*, ¶ 40. We also reaffirmed the general approach set forth in *Okland* for evaluating collateral challenges to prior convictions: (1) a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects; (2) the defendant has the initial burden to demonstrate that the prior conviction is constitutionally infirm; and (3) once the defendant has done so, the State has the burden to rebut the defendant's evidence. *Maine*, ¶ 33. In the application of this framework, however, we modified our approach in two important respects.

¶11    Under *Okland*, the defendant had the initial burden to produce direct evidence that the prior conviction is invalid. *Okland*, 283 Mont. at 18, 941 P.2d at 436. This could be accomplished simply by filing an affidavit stating, for example, that he was not advised of his right to a court-appointed attorney in the event that he could not afford one. *See e.g. State v. Jenni*, 283 Mont. 21, 25, 938 P.2d 1318, 1321 (1997); *State v. Kvislen*, 2003 MT 27, ¶ 11, 314 Mont. 176, 64 P.3d 1006. Once the defendant made this showing, the burden then shifted to the State to produce direct evidence and prove by a preponderance of the evidence that the prior conviction was not entered in violation of the defendant's rights. *Okland*, 283 Mont. at 18, 941 P.2d at 436.

6

¶12     In *Maine*, however, we acknowledged that the State has an interest in deterring habitual offenders as well as an interest in the finality of convictions, which are difficult to defend against collateral attacks many years after the fact. *Maine*, ¶ 29. We thus determined that, as the moving party, the ultimate burden of proof—which includes both the burden of production and the burden of persuasion[2]—shall be on *the defendant*, who must prove by a preponderance of the evidence that the conviction is *invalid*. The burden is not on *the State* to prove by a preponderance of the evidence that the conviction is *valid*. *Maine*, ¶ 34. We further held that, to meet his or her burden of proof, the defendant may not simply point to an ambiguous or silent record, but must come forward with affirmative evidence establishing that the prior conviction was obtained in violation of the Constitution. *Maine*, ¶ 34. Additionally, self-serving statements by the defendant that his or her conviction is infirm are insufficient to overcome the presumption of regularity and bar the use of the conviction for enhancement. *Maine*, ¶ 34.

¶13     Therefore, as a result of *Maine*, the framework for evaluating collateral challenges to prior convictions offered for sentence enhancement purposes is now as follows:

1.  a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects;

---

[2] *See Black's Law Dictionary* 223 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009) (the burden of proof is "[a] party's duty to prove a disputed assertion or charge" and "includes both the *burden of persuasion* and the *burden of production*"). The burden of production is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as a summary judgment or a directed verdict." *Black's Law Dictionary* 223. The burden of persuasion is "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party. • In civil cases, the plaintiff's burden is usu. 'by a preponderance of the evidence,' while in criminal cases the prosecution's burden is 'beyond a reasonable doubt.' " *Black's Law Dictionary* 223.

2. the defendant has the burden to overcome the presumption of regularity by producing affirmative evidence and persuading the court, by a preponderance of the evidence, that the prior conviction is constitutionally infirm; and

3. once the defendant has done so, the State has the burden to rebut the defendant's evidence.

*Maine*, ¶¶ 33-34.

¶14 Before applying this framework in the present case, it is necessary to address the parties' disagreement regarding what type of evidence a defendant may use to prove that a prior conviction is constitutionally infirm. Under *Okland*, both the defendant and the State had to meet their respective burdens using only direct evidence. *Okland*, 283 Mont. at 18-20, 941 P.2d at 436-37; *see also e.g. State v. Snell*, 2004 MT 334, ¶¶ 26-31, 324 Mont. 173, 103 P.3d 503. "Direct evidence" is "that which proves a fact without an inference or presumption and which in itself, if true, establishes that fact." Section 26-1-102(5), MCA. This is to be contrasted with "circumstantial evidence," which "tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." Section 26-1-102(1), MCA.

¶15 In *Maine*, however, we stated that the defendant must come forward with "affirmative evidence" establishing that the prior conviction was obtained in violation of the Constitution. *Maine*, ¶ 34. While our use of this term was intentional, we did not elaborate on the meaning of "affirmative evidence" in the context of collateral challenges. As a result, Chaussee now opines that our change in terminology "suggests a slight departure from the strict requirements imposed by the definition of 'direct

8

evidence' in [§ 26-1-102(5), MCA]." The State, on the other hand, acknowledges our use of the term "affirmative evidence" but, citing *Snell*, ¶ 30, maintains that "[c]ircumstantial evidence is insufficient to rebut the presumption of regularity; a defendant must produce direct evidence." The State then argues that the evidence proffered by Chaussee here is essentially all circumstantial. We shall undertake to resolve this confusion.

¶16    At the outset, the *Okland* Court did not explain why the defendant and the State are allowed to use only direct evidence in meeting their respective burdens. But implicit in this limitation is the premise that circumstantial evidence either is incapable of proving the fact in issue or is inferior in some way to direct evidence. Both of these propositions are contrary to the law of evidence. "Proof" is the establishment of a fact by evidence. Section 26-1-101(4), MCA. "Evidence" is the means of ascertaining in a judicial proceeding the truth respecting a question of fact, including but not limited to witness testimony, writings, physical objects, or other things presented to the senses. Section 26-1-101(2), MCA. By definition, direct evidence and circumstantial evidence are each capable of establishing a fact, § 26-1-102(1), (5), MCA, and we have long recognized that "the solution of any issue may rest in whole or in part upon circumstantial evidence," *Dalbey v. Equitable Life Assurance Socy.*, 105 Mont. 587, 599, 74 P.2d 432, 435 (1937). By way of example, circumstantial evidence is sufficient and often times necessary in a strict liability case to prove causation. *McGuire v. Nelson*, 167 Mont. 188, 196, 536 P.2d 768, 773 (1975). Likewise, we have held numerous times that circumstantial evidence alone may be sufficient to support a criminal conviction. *State v. Hall*, 1999 MT 297, ¶ 22, 297 Mont. 111, 991 P.2d 929; *State v. Rosling*, 2008 MT 62, ¶ 36, 342 Mont. 1, 180

9

P.3d 1102. Circumstantial evidence, moreover, "may be and often is stronger and more convincing than direct evidence." *State v. Galpin*, 2003 MT 324, ¶ 30, 318 Mont. 318, 80 P.3d 1207 (internal quotation marks omitted); *accord United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974) ("Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."). Circumstantial evidence "is not always inferior in quality nor is it necessarily relegated to a 'second class status' in the consideration to be given it." *State v. Cor*, 144 Mont. 323, 326, 396 P.2d 86, 88 (1964). It is incongruous, therefore, to allow direct evidence, but disallow circumstantial evidence, of constitutional infirmity.

¶17 The critical point in the context of collateral challenges to prior convictions is that a presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects. To overcome this presumption, something more than an ambiguous or silent record from the convicting court, or testimony speculating about what might or might not have happened in a given case ten or twenty years earlier, is required to meet the defendant's burden of proof—hence our use of the term "affirmative evidence" in *Maine*. We do not hold that the defendant and the State are limited to direct evidence. Circumstantial evidence is permissible. We do hold, however, that the defendant's evidence must show *affirmatively* that his constitutional right was violated.

¶18 Implicit in Chaussee's argument on appeal is the premise that our modification of *Okland*, to require that the defendant's challenge be supported by "affirmative" evidence, somehow lessened the defendant's burden of proof. It did not. Affirmative evidence

may include direct evidence and circumstantial evidence. But whatever evidence is offered, it must be more than a silent or ambiguous record, and conclusory or self-serving inferences drawn therefrom, or testimony speculating about what might have happened in the underlying case. Affirmative evidence is evidence which demonstrates that certain facts actually exist or, in the context of a collateral challenge, that certain facts *actually existed* at some point in the past—for example, that the trial court actually did not advise the accused of her right to counsel, or that an indigent defendant actually requested the appointment of counsel but counsel was actually refused. An affidavit from the defendant, a witness, or court personnel attesting this sort of affirmative evidence will figure more persuasively in the calculus of whether the rebuttable presumption of regularity has been overcome than will, for example, references to unclear court minutes, judge's notes, or preprinted forms. The presumption of regularity, while rebuttable, is a presumption nonetheless. The reviewing court will *presume*—i.e., "suppose to be true in the absence of proof"[3]—the regularity of the prior conviction; and it is the defendant's burden of production and burden of persuasion to *prove* the invalidity of the prior conviction. *Maine*, ¶ 34. Quite simply, ambiguous documents, self-serving and conclusory inferences, and forcing the State to prove the validity of the prior conviction, when such validity is already presumed, do not suffice as "affirmative" evidence for purposes of meeting the defendant's burdens.

¶19 Turning now to Chaussee's proof in the present case, he has produced no affirmative evidence—not even an affidavit—establishing that he actually did not

_____

[3] *Black's Law Dictionary* 1304.

knowingly waive his right to counsel in the 1997 and 1999 cases. The 1997 court record is ambiguous at best. Furthermore, the two forms in the 1999 court record, taken together, indicate that Chaussee *was*, in fact, advised of his right to counsel and knowingly waived it.

¶20 Chaussee reminds us that "[t]his Court will not engage in presumptions of waiver [of one's constitutional rights]." *Howard*, ¶ 12; *accord Barker v. Wingo*, 407 U.S. 514, 525-26, 92 S. Ct. 2182, 2189-90 (1972) ("Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence in the loss of fundamental rights." (citations and internal quotation marks omitted)). Yet, while this principle is true in other contexts, it does not control in the context of collateral challenges to prior convictions offered for sentence enhancement purposes where, as noted, a rebuttable presumption of regularity attaches to the prior conviction and we presume that the convicting court complied with the law in all respects, unless and until the defendant produces affirmative evidence to the contrary. *Maine*, ¶¶ 33-34.

¶21 Chaussee points out that neither "Yes" nor "No" is circled after the words "Do you understand your rights?" on the second form in the 1999 record. However, the form's failure to indicate either way whether Chaussee was advised of his rights and knowingly waived them is not affirmative evidence of a constitutional violation. Again, we presume that the Darby City Court complied with the law in all respects; thus, any ambiguity in the record is resolved against the defendant.

¶22 Chaussee further contends that the testimony of Missoula Municipal Court Judge Donald J. Louden in the *Howard* case is direct evidence that his 1997 conviction is

12

infirm. (Louden presided over the 1997 proceedings against Chaussee.) In *Howard*, Louden testified at an evidentiary hearing that he had been the Missoula Municipal Court judge for twelve years and that he handled three to four hundred DUI charges each year. Louden explained his practice of advising criminal defendants, and recited from memory the colloquy he used with all defendants. This colloquy included advising the defendant that she had the rights to be represented by an attorney and to have an attorney appointed to represent her, and that she could have more time to think over her plea decision and discuss it with an attorney or anyone else she wished. *Howard*, ¶ 5. In Howard's case, Louden did not specifically recall Howard's waiving her right to counsel, and there was not a note to this effect in the 1997 court minutes, but Louden did know "that she was told that she had the right to have an attorney and to have an attorney appointed to represent her. I know that she was told that if she pled guilty, that she was waiving all of the rights. That she would have indicated that she did understand the rights and indicated that she wished to enter a plea of guilty." *Howard*, ¶ 5. Louden further testified that it was his practice to advise all criminal defendants that by pleading guilty to the offense, they would waive their right to counsel, but he made it clear that it was not his practice in 1997 to expressly ask defendants whether they waived their right to counsel prior to the defendant's entering a plea of guilty. *Howard*, ¶ 6.

¶23 Chaussee observes that we denounced Louden's "shortcut" practice of obtaining a defendant's waiver of the right to counsel simultaneously with her guilty plea. *See Howard*, ¶ 15. Chaussee acknowledges that "it does not appear" he entered a guilty plea for the 1997 offense—which in itself, as the State points out, distinguishes *Howard* from

13

the present case. Nevertheless, Chaussee maintains that any waiver of rights in his 1997 case is still "suspect" in light of Louden's practice. Chaussee argues that "[t]his showing of irregularity, combined with the absence of any evidence that Chaussee was advised of his right to counsel or that any waiver was specifically, voluntarily, and knowingly given," is sufficient to satisfy his burden of proof. Along these same lines, Chaussee faults the 1999 record because, in his view, "[t]here is absolutely no indication that he was advised of his right to counsel." He argues that "if true," i.e., if the advisement of rights did not occur for the 1999 DUI offense, then his waiver of counsel was not made knowingly.

¶24 These, however, are exactly the sorts of arguments that, as explained above, are not sufficient to establish constitutional infirmity.[4] The absence of any evidence that Chaussee was advised of his right to counsel and made a knowing waiver of that right is not affirmative evidence that he actually was *not* advised of his right to counsel and did *not* knowingly waive it. That the record may be "suspect" is wholly insufficient to rebut the presumption of regularity.

¶25 It should be noted that we have made these same points before. Although they were made under the rubric of *Okland*'s "direct evidence" requirement, the gist of our observations is still pertinent. Specifically, in *State v. Anderson*, 2001 MT 188, 306 Mont. 243, 32 P.3d 750, we explained:

---

[4] We acknowledge that Chaussee's opening brief on appeal was filed April 15, 2011, seventeen days before we issued our decision in *Maine* (on May 2). However, he maintains the same arguments in his reply brief, which was filed May 27.

14

Essentially, Anderson is claiming that the *lack* of direct evidence for the *validity* of the Miles City DUI conviction is, itself, *direct evidence* that it was *invalid* and is sufficient to shift the burden of proof to the State. This argument is both illogical and turns the presumption of regularity upon its head. Proof of a fact is not made by presenting no evidence for its converse. Moreover, a defendant attacking the validity of a prior conviction has the burden of rebutting the presumption of regularity with direct evidence of irregularity. The fact that the disposition form fails to show that he waived his right to counsel or to a jury is not direct evidence that Anderson was denied his right to an attorney or denied his right to a trial by jury. Nor is it proof that he was subject to coercion or that his free speech or privacy rights were violated. In sum, it is not proof of anything. It is absence of proof. And it is wholly insufficient to shift the burden of proof to the State. It is Anderson who has the initial burden of showing irregularity. Simply submitting a document that does not prove regularity does not meet this burden.

*Anderson*, ¶ 22 (emphases in original); *see also e.g. State v. LaPier*, 1998 MT 174, ¶ 15, 289 Mont. 392, 961 P.2d 1274 ("Here, the absence of a waiver of the right to counsel on the face of the judgment in the police court proceeding is merely the absence of part of the record and, under *Okland*, the rebuttable presumption of regularity attaches notwithstanding such an absence."), *overruled on other grounds*, *Slavin v. State*, 2005 MT 306, ¶ 12, 329 Mont. 424, 127 P.3d 350. While we now permit circumstantial evidence as well as direct evidence, what still remains true is that "[p]roof of a fact is not made by presenting no evidence for its converse." *Anderson*, ¶ 22. In other words, the lack of evidence showing that the prior conviction is valid is not proof, by affirmative evidence, that the conviction is invalid.

¶26    As a final matter, Chaussee contends that the District Court should have held an evidentiary hearing on his motion. We agree that in some instances, a defendant's right to present evidence in support of his claim will necessitate a hearing. We conclude,

15

however, that the decision to grant a hearing on a motion challenging the validity of a prior conviction offered for sentence enhancement purposes is within the sound discretion of the trial court. Moreover, before a defendant may be entitled to such a hearing, he must make a prima facie showing that the challenged conviction is invalid. Here, Chaussee failed to make this showing.

## CONCLUSION

¶27 Chaussee failed in his burdens of production and persuasion to demonstrate that his 1997 and 1999 convictions are constitutionally infirm. Accordingly, the District Court did not err in denying his motion to dismiss.

¶28 As a concluding observation, the dispute in this case is the perfect example of a battle that did not need to be fought. Montana's rules of criminal procedure (Title 46, chapters 7 and 12, MCA) in general, and §§ 46-7-102 and 46-12-210, MCA, in particular, specify the information that is to be given to accused persons at the initial appearance and at arraignment. We stress, repeatedly, to examining courts the necessity to maintain consistent procedures and a consistent, clear paper trail for initial appearances and arraignments. The creation of this paper trail is not the responsibility of the court clerk. It is the responsibility of the judge because, ultimately, it is the judge's, not the clerk's, legal obligation to insure that the statutory requirements for the initial appearance and the arraignment are met. As here, incomplete forms, ambiguous minutes, and confusing notations may not, by themselves, rebut the presumption of regularity. But one thing is certain: This sort of incomplete, unclear, and confusing paper trail causes more work for every participant in the criminal justice system.

¶29    The decision of the District Court is affirmed.

                                    /S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS