Justice Jim Rice, dissenting.
¶21 In my view, M. R. Evid. 403 was not violated because the subsequent drug charge evidence was relevant, probative, and not unfairly prejudicial. Because the probative value is not outweighed by the danger of unfair prejudice, I would affirm the jury conviction under § 45-9-206, MCA.
A. The subsequent drug charges were relevant to show intent on the criminal forfeiture charge.
¶22 "A person commits the offense of use or possession of property subject to criminal forfeiture if the person knowingly possesses , owns, uses, or attempts to use property that is subject to criminal forfeiture under this section." Section 45-9-206(1), MCA. (Emphasis added.) Property that is subject to criminal forfeiture includes "money ... that is used or intended for use in ... delivering, importing or exporting a dangerous drug[.]" Section 45-9-206(3)(a), MCA. (Emphasis added.) Therefore, the offense includes forward-looking elements that requires the State to show sufficient evidence that the money was intended for use in a drug transaction. The Court appears to agree that the evidence is relevant under M. R. Evid. 404(b) to show intent, but concludes the probative value was substantially outweighed by unfair prejudice under M. R. Evid 403. Opinion, ¶ 13.
B. The State was entitled to rebut the defense witnesses' assertions that the money seized from Buckles' vehicle originated from legitimate sources and was used for legitimate purposes.
¶23 Near the end of the first day of trial, the District Court held a conference with the parties outside the presence of the jury. The State indicated it intended to present evidence that while Buckles awaited trial in this case, he was arrested in Utah and charged with possession of methamphetamine with intent to distribute. The District Court observed that Buckles was "not required to present any proof," but inquired whether the *518 defense intended to introduce evidence that he had legitimate sources and purposes for the $21,200 found in Buckles' vehicle, and defense counsel indicated they would account for the ***519 money. The District Court concluded that "under relevance, under the State's use of this evidence for the purposes of intent ... to use this money to purchase drugs" the Utah drug charges would be admissible to rebut the expected assertions by the defense that there was a "legitimate purpose" and "intent with regard to the $21,000." The District Court noted that "there is a relevance link" between the events charged but not proven in Utah and the events charged but not proven in Montana.[1] Thus, the District Court barred the State from discussing the subsequent charges during its case-in-chief, but ruled that if the defense presented evidence that there was legitimate purposes and sources for the money, the State was entitled to rebut the assertion with testimony pertaining to the charges. The District Court advised it would limit "the scope of what will be allowed by the Utah charges" and the court testimony to only the existence of the charges, and solicited proposed cautionary instructions from the parties. The District Court advised defense counsel it was "free to challenge the ***520 weight the jury is to give to that evidence. You are free to point out that these are unproven charges. That he is presumed innocent of the Utah charges ... and that the weight of that evidence should not sway the jury from the presumption of innocence." See Salvagni , ¶ 55 (finding there is no "quantum of proof" to admit other-acts evidence and the credibility of witnesses "go to the weight of the evidence" and "evidence is not inadmissible just because [the defendant] believes the witnesses are not credible[,]" thus the defendant is free to cross-examine the witness to attempt to discredit their testimony).
¶24 The State began by eliciting testimony from Sergeant Troy Muri of the Montana Highway Patrol, who initiated the traffic stop for speeding. Muri testified that, during questioning, Buckles stated he was driving to Billings "to try to find a dealership to work on his pickup" because the "heater wasn't working correctly." Muri testified that the explanation was odd since it was "the middle of May" and because, earlier in their conversation, Buckles had stated he was a car mechanic, but Buckles contended he just "couldn't get it to work." Muri testified that, during the stop, Buckles' father-in-law Scott Cole saw Buckles being detained and pulled over to inquire. Muri testified that Cole stated he was headed to Miles City to get a Mother's Day present for his grandma, and that Buckles "was also going to Miles City *519 and then he was going to continue on to Billings." Muri testified that after Buckles' arrest, an inventory search revealed some cell phones, two meth pipes, and $21,200 in "thousand-dollar increments wrapped in rubber bands" in a "bank bag."
¶25 As planned, defense counsel then sought to establish Buckles' intended purpose for the cash. The Court credits Buckles' proffered story, stating his two witnesses offered a "legitimate basis for possessing the money and legitimate purpose for which it was intended to be used." Opinion, ¶ 7. (Emphasis added.) However, review of the record demonstrates a rational jury was fully entitled to reject the "legitimate" basis of the questionable testimony from Buckles' witnesses, the totality of which led to the District Court admonishing the defense for potentially suborning perjury.
¶26 Because Buckles was pulled over by police on May 10, 2015, defense counsel sought to incorporate all possible cash Buckles might have received prior to that date as an explanation for the $21,200 in cash found in the vehicle. To this end, Buckles called his niece, Adrianne Browning, to testify. Browning testified that, on May 9, 2015, she purchased Buckles' truck and paid him $10,000 in cash. Browning testified she didn't "remember what year" the truck was but she knew ***521 it was a "Chevy."[2] Browning stated that she believed there was a bill of sale that could verify the purchase, but she didn't know where it was, and it wasn't in her possession. Browning further testified that, the day after she bought Buckles' truck, Buckles borrowed the same truck she had just purchased from him:
State : [Buckles] didn't give you any reason for why he needed this vehicle?
Browning : No.
State : So you had owned the vehicle for all of-less than 24 hours?
Browning : Uh-huh.
State : And [Buckles] takes this vehicle and leaves?
Browning : Uh-huh. Yes.
¶27 Defense counsel asked Browning about Buckles' plan to purchase a building to start a business. Browning believed that Buckles intended to start a business in Poplar, and asserted he was going to look at a building to purchase:
Defense : Did you have any discussions with [Buckles] prior to his trip to Billings that resulted in the stop?
Browning : He said he was going to look at a building or ...
Defense : And then you received the call that the car was impounded?
Browning : Yes.
However, on cross-examination, Browning stated several times that she didn't know where Buckles was going:
State : So [Buckles] didn't ask you or didn't tell you where he was going or why he needed your vehicle?
Browning : No.
State : But your testimony on direct was that he was going to Billings to look at a building.
Browning : No, I didn't-no. He had talked about it but he didn't say that's where he was going. I didn't even ask.
¶28 The State asked Browning if, when discussing return of the impounded vehicle with police after Buckles' arrest, she had indicated the vehicle was stolen, and Browning said she had not. Browning testified several times that she was certain that the total price of the vehicle was $10,000 and that she gave Buckles the money in "loose" bills that were not bound in any way. Browning also alleged that ***522 Buckles may have had additional cash from an insurance settlement earlier in 2015, because she was involved in the accident while driving Buckles' car. Browning stated that Buckles received a cash settlement of $3000 but she was not sure when it was paid out to him. As part of the settlement, Browning also received money in July 2015.
¶29 Marilee Buckles (Marilee), Buckles' sister, testified that she had a power of attorney *520 for Buckles and shared a bank account with him. Marilee testified she would give Buckles money whenever he asked for it, and that she knew "for sure" she gave him $3,000, and she may have given him up to $6,000 sometime in April or May of 2015. Marilee testified that Buckles intended to start a "garage business" in Poplar. In addition to money drawn from their shared bank account, Marilee testified she personally saw their mother give Buckles $12,000 in cash in December 2014.
¶30 Immediately after Marilee's testimony, the District Court dismissed the jury to the jury room and held a conference with counsel. The District Court indicated that the case was "very close to mistrial" and that it had "real concerns that [defense] witnesses have committed perjury" and hoped that defense counsel had "talked to [defense] witnesses about the importance of being candid, the whole truth, and nothing but the truth[.]" The District Court recalled that, at a September 6, 2016 Pretrial Motions Hearing, Marilee testified that her mother and her had only discussed that money was given to Buckles, not that she witnessed the mother giving Buckles the money, and that Buckles himself testified that Browning paid him $8,500 for the truck, not $10,000:
[I]t is concerning to see the amount of the truck went from $8,500 to $10,000. The-when we were at the prior hearing, the $12,000 was-I believe it was Marilee saying that this-the witness with the dialysis had told her that she gave Morris $12,000. Not that she had witnessed it, but then today she testified she witnessed it.
¶31 After this conference, testimony continued. On rebuttal, the State called Muri. The prosecutor asked Muri under what circumstances Browning retrieved her vehicle after it was impounded:
State : And did [Browning] claim ownership of the 1999 pickup truck?
Muri : She said she had bought it, and then she said that Mr. Buckles had stole it.
State : Did she relay to you the circumstances under which he stole it from her?
***523 Muri : She had said on Saturday that he had stole[n] the vehicle from her.
State : Did she tell you what she was doing when he stole it from her?
Muri : She said she had been passed out on the floor when he stole it.
¶32 The State called Agent Jeffrey Faycosh. Faycosh read Buckles' testimony from the prior hearing that Browning "purchased the truck and paid me $8,500 in cash for the truck." The State then informed the District Court it was about to elicit testimony about the subsequent charges, and the Court read aloud a cautionary jury instruction. The State then inquired:
State : What happened after the Defendant was released from custody?
Faycosh : In February of 2016, two months after his release or thereabouts, then the arrest in Weber County, Utah, of him and a co-defendant.
State : And what was the result of that arrest?
Faycosh : Charges were filed in Weber County, Utah, for Possession with Intent to Distribute Methamphetamine, Possession of Marijuana and Possession of Paraphernalia.
State : And where exactly is Weber County, Utah, in relation to Custer County?
Faycosh : It would be southwest of Custer County
State : You stated that he was charged with two crimes. What exactly did that mean, sir?
Faycosh : It means he's not been convicted. It means there was at least probable cause to commence legal proceeding, but it has not been proven beyond a reasonable doubt that he committed those crimes, and a co-defendant, as well.
¶33 The State ended its questioning. Before closing arguments, the District Court gave another cautionary instruction about proper use of the evidence concerning the Utah charges.
¶34 The District Court did not err by admitting testimony to rebut the defense's witnesses. Defense witness testimony was inconsistent and largely unverified by the documentary evidence, and, despite it being, in the District Court's view, perjury, provided a story about the purpose of the cash. As to *521 the forfeiture charge, questions existed regarding the amount of money Browning stated she paid Buckles and Buckles stated that he received-putting into question the amount of money involved in the car transaction-or whether Buckles may have ***524 stolen the vehicle from Browning. Browning's testimony also offered the possibility that Buckles had money from an insurance settlement, but did not establish the timing of when Buckles received the settlement. Finally, Marilee could not recall the exact amount of money she gave Buckles, somewhere between $3000-$6,000, and sometime in April or May of 2015. Marilee changed her story about whether she witnessed or merely discussed that her mother gave money to Buckles. Therefore, the existence, amount and timing all the sources of cash, and its intended purpose, were all put into question by the defense's testimony.
C. Any prejudice resulting from the drug charges does not substantially outweigh the probative value. The District Court carefully limited testimony and provided multiple limiting instructions to cure any prejudice.
¶35 Probative evidence is usually prejudicial, but rises to the level of being unfairly prejudicial only "if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues." State v. Blaz , 2017 MT 164, ¶ 20, 388 Mont. 105, 398 P.3d 247 (citation omitted). "Even if evidence is potentially unfairly prejudicial, the Rule 403 balancing test favors admission-the risk of unfair prejudice must substantially outweigh the evidence's probative value." State v. Madplume , 2017 MT 40, ¶ 33, 386 Mont. 368, 390 P.3d 142. The risk of unfair prejudice "substantially outweigh[ing]" the evidence's probative value "occurs when the evidence will prompt the jury to decide the case on an improper basis." State v. Stewart , 2012 MT 317, ¶ 67, 367 Mont. 503, 291 P.3d 1187 (citation omitted).
¶36 The Court concludes that the evidence of Buckles' drug charges "had no relevance other than to show Buckles' character and mislead the jury" and would only penalize the defendant for "his character of bad behavior[.]" Opinion, ¶ 16. The Opinion notes that "[t]he record reflects the State elected not to admit Buckles' prior charges-possession of marijuana, possession of drug paraphernalia, and possession of methamphetamine-because it 'risk[ed] confusing the issues and complicating this particular issue.' " The Court thus offers that because the State "recognized the risk" of the jury being able to draw the inference of bad character from prior acts, the State should have also recognized the risk of subsequent acts impinging character. Opinion, ¶ 16.
¶37 However, the record shows both that the defense put prior acts at issue, and, substantively, that prior acts have a different effect on the ***525 issue of a defendant's character than subsequent acts. During pre-trial, the State indicated it would not present any evidence of Buckles' past convictions, but defense counsel-not the State-discussed prior drug charges during opening statement, noting that "one of the things that is unfortunate about the Defendant is he has been convicted in the past for drug charges" but "it isn't as though he's actively in the habit of buying and selling large quantities of drugs."[3] Further, although the opinion notes that prior convictions may pose a risk the jury will impinge character references on the defendant, at the time of trial, Buckles had not been convicted of the drug charges in Utah, only charged, unlike the prior drug offenses. Therefore, the State, likely out of caution, omitted reference to prior convictions which likely would have the danger of impinging his character, with the improper reference that he was in fact dealing drugs to conform with past behavior from past convictions. *522 We apply the rule barring proof of other crimes to ensure a that a defendant is not convicted "because he committed a crime in the past , he has a defect of character that makes him more likely than people generally to have committed the charged offense." State v. Rogers , 2013 MT 221, ¶ 32, 371 Mont. 239, 306 P.3d 348 (Emphasis added.)[4]
¶38 Even assuming that unfair prejudice resulted from the introduction of the Utah drug charges, "[a] district court may minimize unfair prejudice by admitting evidence for a particular purpose and ***526 limiting the uses to which the jury may put the evidence." State v. Pulst , 2015 MT 184, ¶ 19, 379 Mont. 494, 351 P.3d 687. "A limiting instruction generally cures any unfair prejudice." Blaz , ¶ 20. The District Court carefully limited the scope of the evidence presented, and gave appropriate limiting instructions to mitigate any prejudice. The District Court discussed at length with counsel how the testimony should be presented, how the cautionary instruction should be crafted, how Buckles would be mentioned to the jury as only a co-defendant in the Utah charges, and that his guilt was not to be presumed. Before Faycosh's testimony the District Court gave a limiting instruction, as well as provided the following instruction for the jury to aid its deliberations:
Morris Buckles is on trial only for the offenses charged in this case. Evidence of other acts alleged to have been committed in Utah (and other locations) by Mr. Buckles that have not been charged in this case may not be considered in your deliberations, except as I authorize you to do so. In other words, you may not infer that because the Defendant may have engaged in other acts, that he is guilty of any of the offenses charged in this case. Along with all other evidence in this case, evidence of other actions attributed to the Defendant may be considered only for the limited purpose of aiding the jury to discern motive or intent as to the acts charged in this case. You, the jury, are instructed to determine the credibility and weight, if any, to assign to any evidence of any other criminal charge or alleged act. Mr. Buckles is not being tried for that other charge. He may not be convicted for any other actions except those charged in this case. For the jury to convict Mr. Buckles of any other offense than that charged in this case may result in unjust double punishment.
¶39 The subsequent drug charge was not unfairly prejudicial because the testimony was limited to the charge itself to avoid confusing or misleading the jury, was not evocative or admitted in a way that would produce hostility to the defendant, and, because it was only admitted on rebuttal, did not distract from the main issues. Blaz , ¶ 20. If there was any prejudice, the multiple instructions successfully cured any unfair prejudice that might have occurred, and the District Court did so conscientiously and reasonably. Therefore, in my view, the District Court did not abuse its broad discretion in admitting the Utah drug ***527 charges.[5]
D. The State presented sufficient evidence for a rational jury to convict on the criminal forfeiture charge.
¶40 It is well-established that "circumstantial evidence alone may be sufficient to support *523 a criminal conviction." State v. Chaussee , 2011 MT 203, ¶ 16, 361 Mont. 433, 259 P.3d 783 (citation omitted). However, it is also well-established that the State bears the burden of proving each element of the offense beyond a reasonable doubt. State v. Hegg , 1998 MT 100, ¶ 13, 288 Mont. 254, 956 P.2d 754 (citation omitted).
¶41 In Hegg , police seized quantities of marijuana, methamphetamine, hashish, $7,897 in cash, numerous loaded guns, a coin collection, a safe, and three scales from Hegg's home. Hegg , ¶ 4. The State charged Hegg with drug possession charges as well as a criminal forfeiture charge for the cash, coins, scales, safe, and guns. Hegg , ¶ 5. The jury convicted on all counts and found that each item should be forfeited. Hegg , ¶ 7. On appeal, the State contended that the "mere proximity of the guns, cash, and scales to Hegg's illegal drugs" was sufficient to prove any element of an offense and/or to sustain a conviction. Hegg , ¶ 12. We noted that the criminal forfeiture offense had a mental state, thus the State had to prove that Hegg "knowingly possessed" those items to facilitate illegal drug activity. Hegg , ¶ 14. Thus, we declined to "affirm a criminal forfeiture conviction based on what amounts to no more than a justifiable suspicion." We reasoned that the presence of cash in a home, with nothing more, was not sufficient circumstantial evidence from which a jury could conclude beyond a reasonable doubt that the property was subject to criminal forfeiture, and that the State had failed to show that "the cash that was confiscated ... was traceable to illegal drug sales," therefore the evidence was insufficient. Hegg , ¶ 15.
¶42 Here, equally, while it might be tempting to make the inference that $21,200 in cash bound in rubber bands in a bank bag along with the other circumstantial evidence of the gps, burner phones, and drugs could be sufficient evidence from which a jury could convict on the forfeiture charge, the State recognized that it still needed to prove ***528 intent to use the money for illegal activity, i.e. that Buckles possessed cash that could be "traceable" to "illegal drug sales." Hegg , ¶ 15. To that end, the State offered probative evidence to supplement the circumstantial evidence that the cash was intended to be used for a drug transaction. Now that the State has presented evidence sufficient for a reasonable jury to convict by providing a logical nexus from the traceability of the cash to an illegal drug transaction, this Court reasons that the evidence violates Rule 403. To the contrary, the evidence is clearly consequential to a determination of an element of the crime, whether Buckles possessed the intent for the crime charged. A thorough review of the record does not demonstrate that the State's theory of admissibility was in any way tied to the inference of bad character, and indeed, the character reference based on past crimes was from Buckles' own counsel.
¶43 The Utah drug charges were highly probative of intent as well as to rebut the defense witnesses' assertions of legitimate sources of the money. District courts are vested with broad discretion in controlling the admission of evidence at trial. Seltzer v. Morton , 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. We review the district court to determine whether the court abused its discretion. Seltzer , ¶ 65. To establish that a court abused its discretion, the appellant must demonstrate that the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. Seltzer , ¶ 65. The District Court did not abuse its discretion in admitting the subsequent drug charges.
¶44 I would affirm.

The Court states that "the record reflects the District Court failed to weigh the probative value of the evidence against the danger of unfair prejudice." Opinion, ¶ 13. However, the discussions between counsel and the District Court were concerning apparent violations of Rule 404(b), not Rule 403. Similarly, the arguments in the appellate briefs address Rule 404(b). This Court cannot fault the District Court for not considering issues that were not raised by the parties on the trial level, nor does this Court typically consider issues raised for the first time on appeal.
In his appellate arguments, within the context that the evidence proffered by the State is other crimes evidence under Rule 404(b), Buckles cites the Modified Just Rule, a Rule 404(b) analytical framework that incorporated Rule 403 considerations. See e.g. State v. Green , 2009 MT 114, ¶ 25, 350 Mont. 141, 205 P.3d 798. However, this Court overruled the Modified Just Rule in Salvagni , explaining that the rule was "no longer the correct analytical approach" and "rather, when presented with a claim that evidence is being offered for an impermissible propensity inference, the court should simply apply Rules 402 and 404 (and if requested, Rules 403 and 105)." See State v. Dist. Court of the Eighteenth Judicial Dist ., 2010 MT 263, ¶ 56, 358 Mont. 325, 246 P.3d 415 (hereinafter Salvagni ). For these reasons, it is incorrect for the Court to state that Buckles argues the District Court erred in not considering Rule 403, because Buckles never expressly made a 403 argument, but, rather, erroneously made a discarded argument under Rule 404(b).
Nonetheless, the record reveals that the District Court in fact weighed and considered Rule 403's effect of the state's intended evidence. The District Court believed that allowing the State to rebut the defense's evidence was not unduly prejudicial, and ruled that if the defense declined to offer evidence on admissible purposes for the money, the court would "evaluate at that point whether there is an undue prejudice" in allowing the State to present evidence as to the Utah drug charges. The District Court also considered the "similarity" and "remoteness" criteria, which are appropriate considerations under Rule 403, see Salvagni , ¶ 56, and concluded that the charges were "relevant because of the similarity of the conduct" and the "proximity in time."

Buckles made representations in pleadings filed to the District Court that the vehicle sold was a 1999 Chevrolet pickup truck.

The Court states that a highly prejudicial statement by the State occurred during closing statements, where the State observed "the State of Montana is not here today to argue about whether the Defendant was a good drug dealer or a bad drug dealer." Opinion, ¶ 16. This statement was in response to the defense, again, putting drug dealing at issue during its closing argument, where it observed, "If he was a really good drug dealer, he would have a lot of [scales and packaging] in his truck."

This Court has approved the admission of subsequent bad acts when offered for a non-propensity purpose. See e.g. State v. Gray , 197 Mont. 348, 643 P.2d 233 (1982) ; State v. Berger , 1998 MT 170, ¶¶ 36-40, 290 Mont. 78, 964 P.2d 725. The Ninth Circuit has concluded that, "Acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind." United States v. Voorhies , 658 F.2d 710, 715 (9th Cir. 1981). "[E]vidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial." United States v. Ayers , 924 F.2d 1468, 1473 (9th Cir. 1991) ; United States v. Mehrmanesh , 689 F.2d 822 (9th Cir. 1982) (evidence that defendant continued to sell drugs after his arrest was admitted to show that he intended something more than mere personal use of heroin); United States v. Young , 572 F.2d 1137 (5th Cir. 1978) (testimony regarding defendant's subsequent narcotics transactions admitted in trial for conspiracy to possess cocaine with intent to distribute).

The District Court also gave Instruction Number 3, which instructed the jury that they were the "sole judges of the credibility" of the witnesses and the weight given to their testimony. The District Court instructed that the jury was entitled to consider "the extent to which the witnesses are either supported or contracted by other evidence in the case" and whether a witness may be motivated by "bias or prejudice." The District Court instructed that if the jury believed a witness has testified falsely, it "must reject" such testimony.