DA 11-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 316

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KENNETH MAYNARD NIXON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 10-131
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender; Kristen L. Larson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General, Helena, Montana

            William E. Fulbright, Ravalli County Attorney, Helena, Montana

Submitted on Briefs:  October 10, 2012
Decided:   December 27, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Defendant appeals from the judgment of the Twenty-First Judicial District Court, Ravalli County, denying his motion to dismiss due to invalidity of prior DUI convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On September 13, 2010, Kenneth Maynard Nixon (Nixon) was charged with Driving Under the Influence of Alcohol/Drugs (DUI) (fourth or subsequent offense). The Information provided that Nixon was previously convicted of qualifying DUI offenses in March 2009, April 1999, and December 1992.

¶3    On April 25, 2011, Nixon filed a motion to dismiss due to invalidity of prior DUI convictions. In his motion, he challenged his 1992 DUI conviction on the basis of constitutional infirmity. Specifically, he asserted that the 1992 conviction could not be used to enhance the current charge because the court failed to obtain a valid and express waiver of the right to counsel prior to taking Nixon's guilty plea. Nixon submitted an affidavit with his motion that attested as follows:

> On December 24, 1992 I pled guilty to DUI in Ravalli County Justice Court[.] I was indigent and unable to retain a private attorney. I was not represented by a lawyer in this proceeding. Prior to entering my guilty plea on December 24, 1992 I was not expressly advised of my right to counsel and I did not expressly and explicitly waive that right prior to pleading guilty.

Nixon also attached the complaint in the 1992 proceeding, as well as the docket page. The complaint indicated that the matter was heard in Ravalli County Justice Court before Nancy Sabo, Justice of the Peace. The docket page stated in relevant part:

2

> On 12/24/92, Defendant appeared, advised of rights, and duly arraigned. (Daily appearance incorporated by reference.) Defendant found guilty by plea. Plea accepted as given voluntarily and with knowledge – Yes.

The section of the docket page reserved for the names of the attorneys included a specific name next to "State," but nothing next to "Defense" or "Appt'd." Nixon was found guilty by the Justice Court and his sentence included jail time.

¶4 The District Court held an evidentiary hearing on Nixon's motion on May 18, 2011. The State called Nancy Sabo to testify. Judge Sabo testified as to her practice in advising defendants of their rights to counsel at the time of arraignment and at the time of accepting guilty pleas. She stated that she used a daily appearance sheet that included several questions she would ask each defendant who appeared in her court. It was her general procedure to check off each question as it was asked and answered and to provide written notes that would later be recorded into the docket sheet. Judge Sabo testified it was her practice to advise defendants of their right to counsel several times throughout the proceeding.

¶5 During her testimony, Judge Sabo reviewed the docket page of Nixon's 1992 conviction and acknowledged that it did not reflect whether Nixon was represented by an attorney at the hearing or specifically advised of his right to counsel. Further, she conceded that the form did not explicitly indicate that Nixon waived his right to counsel. She maintained, however, that this type of information would be included in her notes on the daily appearance sheet from the hearing.

¶6 During cross-examination, Nixon admitted several exhibits that indicated Judge Sabo's former partner judge, Justice of the Peace Ed Sperry, presided over Nixon's case in

3

1992, and not Judge Sabo. Upon reviewing the exhibits, Judge Sabo testified that "it was probably Judge Sperry" who took Nixon's plea and sentenced him. Judge Sabo further testified that she and Judge Sperry used the same courtroom, the same clerks and the same forms.

¶7 Nixon also testified at the evidentiary hearing, stating that he believed it was Judge Sperry who took his guilty plea for the 1992 DUI charge. He testified that at the time of his conviction, he was unemployed and not able to afford a private lawyer to represent him. Nixon stated that he did not specifically remember what Judge Sperry said to him at the hearing; however, he did not remember ever being advised of his right to counsel. At one point he testified, "I don't believe I was advised," and at another point stated, "I wasn't advised at that time." When questioned as to whether Judge Sperry asked him before he entered his guilty plea whether he waived his right to counsel, Nixon responded, "I don't believe so, no."

¶8 On May 19, 2011, the District Court denied Nixon's motion. The court found that Nixon's evidence consisted of an "ambiguous or silent record . . . and Nixon's self-serving statements based on his admittedly poor memory of his conviction almost 20 years ago." It therefore concluded that Nixon failed to meet his burden to come forward with affirmative evidence establishing that his 1992 conviction was obtained in violation of the Constitution.

¶9 On June 8, 2011, Nixon entered a no contest plea to the felony DUI charge, reserving his right to appeal the denial of his motion. The District Court accepted the plea and sentenced Nixon to the Department of Corrections (DOC) for a period of thirteen months. The court ordered that if Nixon successfully completes the WATCh program, the remainder

4

of the thirteen months would be served on probation, followed by a five-year suspended sentence to the DOC.

¶10   Nixon raises one issue on appeal, which we restate as follows:

¶11   *Did the District Court err in denying Nixon's motion to dismiss a felony charge of DUI fourth offense based on his claim that his 1992 DUI conviction used to enhance the sentence was constitutionally infirm?*

## STANDARD OF REVIEW

¶12   Whether a prior conviction may be used for sentence enhancement is generally a question of law, for which our review is de novo. *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64. In determining whether a prior conviction is invalid, the district court may first need to make findings of fact, based on oral and documentary evidence presented by the parties, regarding the circumstances of that conviction. *Maine*, ¶ 12. This Court will not disturb such findings unless they are clearly erroneous. *Maine*, ¶ 12.

## DISCUSSION

¶13   *Did the District Court err in denying Nixon's motion to dismiss a felony charge of DUI fourth offense based on his claim that his 1992 DUI conviction used to enhance the sentence was constitutionally infirm?*

¶14   Nixon argues that the docket page, affidavit and testimony he provided at the evidentiary hearing are affirmative evidence that he was not represented by an attorney during his 1992 DUI conviction, not advised of his right to counsel, and did not knowingly waive this right prior to entering a guilty plea. He therefore contends that he satisfied his burden of proof that his 1992 conviction was constitutionally infirm, and that the State failed

5

to rebut with evidence establishing the validity of the conviction. The State counters that Nixon's evidence presents "inconsistent positions" about his memory of the 1992 proceedings. The State argues that Nixon failed to present the necessary affirmative evidence to overcome the presumption of regularity of his 1992 conviction and thus the burden never shifted to the State.

¶15 A constitutionally infirm prior conviction used for enhancement purposes amounts to sentencing based upon misinformation, which is prohibited by the Due Process Clause of Article II, Section 17 of the Montana Constitution. *State v. Haas*, 2011 MT 296, ¶ 14, 363 Mont. 8, 265 P.3d 1221 (citing *Maine*, ¶ 28). Therefore, in Montana, it is well established that the State cannot use a constitutionally infirm conviction to support an enhanced punishment. *Haas*, ¶ 14 (citing *Maine*, ¶ 28). We employ a three-step framework for evaluating collateral challenges to prior convictions offered for sentence enhancement purposes:

1. a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects;

2. the defendant has the burden to overcome the presumption of regularity by producing affirmative evidence and persuading the court, by a preponderance of the evidence, that the prior conviction is constitutionally infirm; and

3. once the defendant has done so, the State has the burden to rebut the defendant's evidence. There is no burden of proof imposed on the State to show that the prior conviction is valid, however. The State's burden, rather, is only to rebut the defendant's showing of invalidity.

*Haas*, ¶ 15 (citing *State v. Chaussee*, 2011 MT 203, ¶¶ 12-13, 361 Mont. 433, 259 P.3d 783).

¶16 A defendant cannot "simply point to an ambiguous or silent record," but must produce affirmative evidence establishing that the prior conviction was constitutionally infirm. *State*

6

*v. Chesterfield*, 2011 MT 256, ¶ 19, 362 Mont. 243, 262 P.3d 1109 (citing *Maine*, ¶ 34). We have defined "affirmative evidence" as evidence "demonstrating that certain facts actually . . . existed at some point in the past—e.g., that an indigent defendant actually requested the appointment of counsel but counsel was actually refused." *Haas*, ¶ 16. Ambiguous documents, self-serving and conclusory inferences, and forcing the State to prove the validity of the prior conviction, when such validity is already presumed, do not suffice as affirmative evidence for purposes of meeting the defendant's burdens. *Haas*, ¶ 16 (citing *Chaussee*, ¶ 18).

¶17 Nixon argues his 1992 conviction was infirm because he was not informed of and did not waive his right to counsel prior to pleading guilty. The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee that in all criminal prosecutions, the accused shall have the fundamental right to the assistance of counsel. *Haas*, ¶ 20 (citing *Chaussee*, ¶ 4). A defendant who cannot afford an attorney is entitled to representation by court-appointed counsel at public expense. *Haas*, ¶ 20 (citing *Chaussee*, ¶ 4). The right to counsel in misdemeanor cases extends only to those cases in which a sentence of imprisonment is actually imposed. *Haas*, ¶ 20 (citing *State v. Walker*, 2008 MT 244, ¶ 17, 344 Mont. 477, 188 P.3d 1069). A defendant can waive his right to counsel only if the waiver is made voluntarily, knowingly, and intelligently. *Haas*, ¶ 20 (citing *Chaussee*, ¶ 4).

¶18 As stated above, a rebuttable presumption of regularity attaches to Nixon's 1992 DUI conviction; however, Nixon may overcome this presumption by affirmative evidence of irregularity. The District Court determined that Nixon did not meet his burden and that the

burden therefore did not shift to the State to rebut Nixon's evidence. On appeal, Nixon relies heavily on his affidavit to argue that the District Court overlooked "clear affirmative evidence of constitutional infirmity," and points to this Court's holdings in *State v. Howard*, 2002 MT 276, 312 Mont. 359, 59 P.3d 1075, and *State v. Walker*, 2008 MT 244, 344 Mont. 477, 188 P.3d 1069, for support. In *Howard* and *Walker*, we recognized that "a defendant's unequivocal and sworn statement that [the defendant] did not waive the right to counsel constitutes direct evidence which rebuts the presumption of regularity." *Howard*, ¶ 13 (internal citations omitted); *Walker*, ¶ 14 (internal citations omitted). In *Howard*, the defendant filed an affidavit attesting that in her prior DUI proceeding, "I could not afford counsel and I was not represented by counsel. I was not advised of my right to court-appointed counsel before I entered my plea of guilty, nor did I waive my right to court-appointed counsel." *Howard*, ¶ 4. Similarly, in *Walker*, the defendant submitted an affidavit stating that during two prior DUI proceedings she was not advised of certain rights, including her right to an attorney if she could not afford one. *Walker*, ¶ 11. In both cases, we found the defendants' affidavits contained "unequivocal and sworn statements" that they did not waive their rights to counsel, and held that the defendants satisfied their burdens. *Howard*, ¶ 13; *Walker*, ¶ 14.

¶19 Nixon maintains that the evidence he brought forward to the District Court likewise contained unequivocal statements that during the 1992 proceedings he was not represented by an attorney, not expressly advised of his right to counsel, and did not waive that right prior to pleading guilty. While his affidavit does contain such declarations and therefore may serve as affirmative evidence of irregularity, as the affidavits did in *Howard* and

8

*Walker*, it does not satisfy his ultimate burden of proof. In *Maine*, which was decided after *Howard* and *Walker*, we acknowledged that the State has an interest in deterring habitual offenders as well as an interest in the finality of convictions, which are difficult to defend against collateral attacks many years after the fact. *Maine*, ¶ 29; *accord Chaussee*, ¶ 12. We thus determined that, as the moving party, the ultimate burden of proof—which includes both the burden of production *and* the burden of persuasion—shall be on the defendant, who must prove by a preponderance of the evidence that the conviction is invalid. *Maine*, ¶ 34; *accord Chaussee*, ¶ 12 (emphasis added).

¶20 Here, Nixon not only presented the District Court with his affidavit, but also with evidence that undermined the probative value of his affidavit statements. His testimony from the evidentiary hearing reveals that he does not remember what Judge Sperry said to him during the prior proceedings. Further, it provides that he does not remember ever being advised of his right to counsel, but does not "believe" that he was or "believe" that he waived that right. The docket page Nixon submitted to the court does not specifically state whether he was advised of his right to counsel or whether he waived that right. It does, however, provide that he was "advised of rights." Although the docket page and Judge Sabo's testimony indicate that there is a "daily appearance" sheet that includes additional information about the proceedings, Nixon did not submit it to the District Court.

¶21 The weight of evidence and the credibility of witnesses are exclusively within the province of the trier of fact, and we will not reweigh the evidence or the credibility of witnesses. *State v. Hurlbert*, 2009 MT 221, ¶ 40, 351 Mont. 316, 211 P.3d 869 (citing *State v. Pitzer*, 2002 MT 82, ¶ 13, 309 Mont. 285, 46 P.3d 582). It is clear from the record that the

9

District Court considered all of the evidence Nixon presented in arriving at its conclusion. We determine that the District Court's finding that Nixon's evidence consisted of an ambiguous or silent record, and self-serving statements, was not clearly erroneous. We therefore hold that the District Court correctly concluded that Nixon failed to meet his burden to come forward with affirmative evidence and persuade the court, by a preponderance of the evidence, that his 1992 conviction was constitutionally infirm.

## CONCLUSION

¶22     For the reasons stated above, we affirm the District Court's Order denying Nixon's motion to dismiss.

¶23     Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

10