FILED

09/08/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0428

DA 18-0428

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 227N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WILLIAM MEALER,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-17-43C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Damon Martin, Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Bjorn E. Boyer, Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:   July 29, 2020

Decided:   September 8, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.　Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2　In February 2017, the State charged Appellant William Mealer ("Mealer") with felony Driving Under the Influence of Alcohol ("DUI").　Mealer filed a Motion to Dismiss or Amend Information, arguing that three of his prior DUI convictions were obtained in violation of his constitutional rights and thus could not be used to enhance the present offense to a felony.[1]　The District Court denied Mealer's motion. Mealer pleaded guilty, reserving his right to appeal.　We affirm.

¶3　On August 23, 2007, Mealer pleaded guilty to three misdemeanor DUIs in Bozeman Municipal Court for offenses occurring on April 2, April 9, and July 3 of that year.　For each charge, Mealer signed a Verification of Arraignment ("VOA") form, a standard form then used by the Bozeman Municipal Court.　The VOA form explained various rights afforded a criminal defendant, including the right to counsel, and stated in relevant part:

> YOU HAVE THE RIGHT TO AN ATTORNEY AT EVERY STAGE OF THE PROCEEDINGS.  IF THE CHARGES AGAINST YOU CARRY THE POSSIBILITY OF JAIL AS A PART OF THE SENTENCE, YOU HAVE THE RIGHT TO A COURT APPOINTED[sic] ATTORNEY, IF YOU

---

[1] Mealer has two additional misdemeanor DUI convictions—one from Bozeman Municipal Court in 2004 and another from Sweet Grass County Justice Court in 2011.

CAN'T AFFORD AN ATTORNEY. THE COURT RESERVES THE RIGHT TO IMPOSE A MODEST FEE TO HELP OFFSET THE COST OF ANY COURT-APPOINTED ATTORNEY. THE LESS WORK THE ATTORNEY HAS TO DO, THE LESS IT WILL COST YOU; SO EARLY CONSULTATION AND, WHERE APPROPRIATE, EARLY RESOLUTION, WILL RESULT IN SAVINGS TO YOU.

¶4 Mealer hired private counsel to represent him on all three DUI charges. At the August 2007 change of plea hearing, Mealer signed an Acknowledgment of Waiver of Rights by Plea of Guilty ("Waiver of Rights") form. The form stated that by pleading "guilty" to the charges against him, Mealer was "giv[ing] up" his trial rights and his right "to have a lawyer unless I have one now, and to have one appointed for me by the court if I am unable to afford to pay for one." Mealer also checked a box on the Waiver of Rights form acknowledging, "I am satisfied with the services of my attorney and [] there has been ample time to prepare a defense." At the bottom of the form, Mealer stated that he believed he was guilty of the offenses charged because: "I drove while intoxicated on April 2, 2007, April 9, 2007, and July 3, 200[7]." Mealer pleaded guilty to all three charges. Pursuant to a plea agreement, the State recommended, and the municipal court imposed, three consecutive six-month sentences. Mealer did not appeal.

¶5 In January 2017, the Montana Highway Patrol arrested Mealer on suspicion of DUI after initially stopping him for not having his taillights on. The State subsequently charged him by information with DUI in violation of § 61-8-401, MCA. Relying on the three 2007 DUI convictions, the State charged the 2017 DUI as a felony under § 61-8-731(1), MCA. On August 18, Mealer moved to dismiss the felony charge or alternatively to reduce it to a misdemeanor, arguing that the VOA's right-to-counsel

3

language rendered his 2007 DUI pleas not knowing or voluntary. Mealer filed an affidavit a week later averring that the VOA forms misled him to believe that he would have to pay for a court-appointed attorney; that he was unable to afford trial costs of either private or court-appointed counsel; and that he pleaded guilty because he could not afford to pay for the cost of going to trial.

¶6    At the hearing on his motion, Mealer testified that, as a student at Montana State University, he did not have the funds to hire private counsel; his mother had provided him with the funds to retain his attorney; he understood the language of the VOA forms to mean that he would need to pay to retain a public defender; and the form told him the less work that public defender did, the less Mealer would have to pay. Mealer further testified that despite believing he could convince a jury he was not guilty, he did not have sufficient funds to retain his private counsel through a trial. Therefore, Mealer said, he pleaded guilty "because I had no more money to fight and I thought [the plea deal] was the best deal I could possibly get based on the resources I had at my disposal."

¶7    Mealer testified on cross-examination that he and his mother decided to retain private counsel and that, after that point, he never spoke with his attorney about the option of getting a public defender. He was unable to recall why be believed a jury would find him not guilty and stated that he took his attorney's advice to plead guilty. Mealer also revealed that he may have initially consulted with the Public Defender's Office before retaining his attorney. Finally, regarding the Waiver of Rights form he signed before accepting his plea deal, Mealer stated that at the time he understood it meant that he could have an attorney appointed for him even if he couldn't afford one. He

4

acknowledged that the Waiver of Rights form stated that he was satisfied with the performance of his attorney and that there had been sufficient time for him to be able to prepare his defense.

¶8     The District Court denied Mealer's motion to dismiss. The court noted that the VOA form the Bozeman Municipal Court used in 2007 contained factually incorrect language—i.e., it implied that a defendant would be required to pay for a public defender regardless of indigence—and reasoned that this language "can be found to be coercive to the extent it can affect a Defendant's ability to properly waive his or her rights knowingly and voluntarily." The court concluded, however, that because Mealer was represented by an attorney, the VOA's language "did not have much of a coercive effect" on him; that any irregularity the VOA's legally incorrect language caused was cured by the correct right-to-counsel language in the Waiver of Rights form; and that "even if there was an irregularity . . . that does not render the Defendant's plea of guilty as involuntary[.] [E]very indication, other than the Defendant's self-serving statements made a decade later, indicate that the Defendant voluntarily pleaded guilty under the advice of competent, private-pay counsel."

¶9     Mealer argues that the District Court erred in holding that he entered knowing and intelligent guilty pleas to his 2007 DUIs and is thus subject to felony penalties for the 2017 DUI charge.

¶10    Whether a prior conviction may be used for sentence enhancement is a question of law that we review de novo. *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64. In determining a prior conviction's validity, the district court may make findings of fact

5

based on oral and documentary evidence regarding the circumstances surrounding that conviction. *State v. Rasmussen*, 2017 MT 259, ¶ 10, 389 Mont. 139, 404 P.3d 719. We will disturb these findings only for clear error. *Rasmussen*, ¶ 10.

¶11 "The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee that in all criminal prosecutions, the accused shall have the fundamental right to assistance of counsel." *State v. Chaussee*, 2011 MT 203, ¶ 4, 361 Mont. 433, 259 P.3d 783. An indigent defendant has the right to a court-appointed attorney at public expense but may waive that right provided she does so voluntarily, knowingly, and intelligently. *Chaussee*, ¶ 4.

¶12 "The Due Process Clause of Article II, Section 17 of the Montana Constitution protects a defendant from being sentenced based upon misinformation." *Maine*, ¶ 28. "A constitutionally infirm prior conviction used for enhancement purposes constitutes 'misinformation of constitutional magnitude.'" *Chaussee*, ¶ 9 (quoting *United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 592 (1972)). The State therefore may not enhance punishment using a constitutionally infirm conviction. *Chaussee*, ¶ 9.

¶13 We apply the following framework to evaluate collateral attacks on prior convictions offered for enhancement purposes:

> 1. a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects;
>
> 2. the defendant has the burden to overcome the presumption of regularity by producing affirmative evidence and persuading the court, by a preponderance of the evidence, that the prior conviction is constitutionally infirm; and

3. once the defendant has done so, the State has the burden to rebut the defendant's evidence. There is no burden of proof imposed on the State to show that the prior conviction is valid, however. The State's burden, rather, is only to rebut the defendant's showing of invalidity.

*State v. Nixon*, 2012 MT 316, ¶ 15, 367 Mont. 495, 291 P.3d 1154 (citing *State v. Hass*, 2011 MT 296, ¶ 15, 363 Mont. 8, 265 P.3d 1221). *See also Rasmussen*, ¶ 14 (noting that "the defendant has the ultimate burden of proof to both produce and persuade by a preponderance of the evidence that the conviction is invalid") (internal citations and quotations omitted).

¶14 Presuming the regularity of Mealer's 2007 convictions, we examine whether he produced affirmative evidence to show by a preponderance that the prior convictions were constitutionally infirm. *Chaussee*, ¶ 13. "'Affirmative evidence' is evidence demonstrating 'certain facts actually exist, or in the context of a collateral challenge, that certain facts actually existed at some point in the past.'" *Rasmussen*, ¶ 14 (quoting *Hass*, ¶ 16). "Ambiguous documents, self-serving and conclusory inferences, and forcing the State to prove the validity of the prior conviction, when such validity is already presumed, do not suffice as affirmative evidence for purposes of meeting the defendant's burden." *Rasmussen*, ¶ 14 (quoting *Hass*, ¶ 16). The ultimate burden—both of production and of persuasion—rests on the defendant. *Chaussee*, ¶ 12.

¶15 Mealer argues that the language in the VOA forms he signed in 2007 "introduced irregularity in the proceeding" and that the "incorrect, confusing, and threatening advisory of the VOA form made the choice [to plead guilty] for him." The District Court agreed that the VOA language is problematic and could "affect a

7

Defendant's ability to properly [waive his or her rights]." Mealer asserts this irregularity is sufficient to demonstrate that his guilty plea was not made knowingly or intelligently. To support this contention, Mealer relies on our decision in *State v. Mann*, 2006 MT 33, 331 Mont. 137, 130 P.3d 164.

¶16    Mann, charged with felony DUI, argued that the confusing and inaccurate language in a VOA form rendered prior DUI convictions constitutionally infirm.    The form in question contained the following right-to-counsel language:

> 4). That I have a right to have legal counsel represent me, but since no provision is made for payment of legal counsel in the lower court, I would be required to pay for such counsel, unless I fill out such form claiming indigency, that I would be sworn as to the truthfulness of statements, this form would then be turned over to the County Attorney who would have an investigation made, if statements made were found to be false I could be tried for perjury. If found true, the Judge may or may not appoint legal counsel to represent me at the State's expense. [sic].

*Mann*, ¶ 6.    Because of this language, Mann claimed that he did not request or obtain counsel at all; he simply pleaded guilty to the misdemeanor charges after reading the VOA form.  *Mann*, ¶¶ 6-7.

¶17    On appeal, we concluded that the VOA contained an incorrect statement of law, leading Mann to believe "that even after he filled out indigence forms and underwent a criminal investigation regarding his truthfulness as to indigence, the District Court could still choose *not* to appoint counsel to represent [the defendant] at the State's expense." *Mann*, ¶ 24.  We held this irregularity sufficient to demonstrate that Mann's waiver of his right to counsel was not knowingly given.  *Mann*, ¶ 24.  Moreover, we concluded that the VOA language threatened additional prosecution for perjury and was generally

"indecipherable." *Mann*, ¶ 24. Accordingly, we concluded that Mann did not knowingly, voluntarily or intelligently waive his right to counsel when he pleaded guilty. *Mann*, ¶ 24.

¶18 Mealer, unlike Mann, was represented by counsel through the majority of the proceedings against him—including during his change-of-plea hearing. Also unlike Mann, Mealer did not make a spontaneous decision to plead guilty based upon the VOA language; he retained counsel and, weeks later when presented with a favorable plea deal, entered his guilty pleas in the presence of his attorney. In contrast to the VOA form at issue in *Mann*, the VOA forms that Mealer signed did not threaten a criminal investigation. Nor did they imply that Mealer would be denied a court-appointed attorney—only that the court could impose a fee "to help offset the costs." In sum, the key findings supporting our decision in *Mann* are not present in the current matter. The fact that the VOA forms Mealer signed contained erroneous right-to-counsel language is not enough, standing alone, to demonstrate his pleas were not made knowingly, intelligently, or voluntarily.

¶19 Even assuming that the erroneous language in the VOA forms introduced irregularity into the proceedings, Mealer has not convinced us that the VOA forms "made the choice [to plead guilty] for him."[2] Though Mealer now claims that but for the cost of attorney's fees he would have elected to go to trial on the DUI charges, he has

---

[2] Mealer also contends that the District Court erred when, in its order denying his motion to dismiss, it stated any error the VOA forms introduced was "cured" by the correct language in the Waiver of Rights form. Because we agree that Mealer did not show by a preponderance of the evidence that he relied on the VOA forms when entering his pleas, we do not address this argument.

produced no contemporaneous evidence to support his contention. On the contrary, the Waiver of Rights form Mealer signed at his change of plea hearing not only informed him correctly of his right to a court-appointed attorney but also contained statements affirming his satisfaction with private counsel.

¶20 All statements and indications that Mealer "wanted to fight" the charges come from statements he made a decade later, after being charged with a felony. These statements, such as those contained in his affidavit, are undercut by his testimony at the motion to dismiss hearing. Mealer averred in his affidavit that he wanted to fight the charges. But at the hearing he could not testify why he thought he might prevail at trial. He testified that despite wanting to go to trial, he never discussed the possibility of switching to a public defender, or even the potential costs of a public defender, with his private attorney. Mealer also acknowledged that he contacted the Public Defender's Office before deciding to hire a private attorney.

¶21 On balance, the evidence presented supports the District Court's finding that Mealer pleaded guilty because of the favorable plea deal his private attorney secured. Mealer testified that "[he] took [his] attorney's advice" to plead guilty; he understood the legally correct right-to-counsel language in the Waiver of Rights form when he signed it; and his attorney advised that his plea deal was "probably the best deal you are going to get." This testimony is inconsistent with Mealer's affidavit that he pleaded guilty because he believed he would have to pay for a public defender should he decide to go to trial. We agree with the District Court that the circumstances surrounding his conviction show that Mealer made a knowing, intelligent, and voluntary plea, under advice of competent counsel, in order to

secure a favorable plea agreement. Therefore, Mealer has not met his burden to demonstrate that his prior convictions are constitutionally infirm.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law was correct. Its order denying Mealer's Motion to Dismiss or Amend Information is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA