FILED

11/16/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0074

DA 20-0074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 299N

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

BRICE WILLIAM WILKE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 2019-106
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Ryan P. Archibald, Office of State Public Defender, Hamilton, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Anne M. Lewis, Law Student Intern, Helena, Montana

      Leo Gallagher, Lewis and Clerk County Attorney, Helena, Montana

Submitted on Briefs:  October 13, 2021

Decided:  November 16, 2021

Filed:

_____
                       Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Defendant and Appellant Brice William Wilke (Wilke) appeals from the December 12, 2019 Judgment and Commitment issued by the First Judicial District Court, Lewis and Clark County, after a jury convicted Wilke of felony DUI following a September 9-10, 2019 trial.  We affirm.

¶3      On February 10, 2019, Dan Nelson (Nelson) was blowing snow off his driveway on Stallion Ridge Drive in Lewis and Clark County during the early afternoon when he saw a blue SUV drive past him.  Nelson saw a driver and no passengers in the vehicle.  Nelson continued snow blowing his driveway, and when he looked up again he saw the vehicle had gotten stuck in a snowbank on the side of the road.  Nelson watched the vehicle unsuccessfully try to get unstuck and then continued with his chores.  He did not see anyone exit the vehicle.  A short while later, Nelson saw his neighbor, Russell Lay (Lay), and two of his children shoveling out the vehicle from the snowbank.  Lay had seen the vehicle stuck in the snowbank when he was driving home from church, but did not see anyone inside, and decided to shovel out the vehicle so it would be free when the driver returned. After about 20-30 minutes of shoveling, Lay and his children noticed a man sleeping in the back seat.  Lay knocked on the window to get his attention, but the person did not respond,

2

though Lay could see the man was breathing. Lay and his children then spent a few minutes shoveling some snow in front of a neighbor's house before returning home. While shoveling in front of the neighbor's house, Lay briefly observed a man outside the vehicle, but did not see him get out or get back in. After returning to his house, Lay called law enforcement to inform them of the stuck vehicle with the man inside.

¶4 Montana Highway Patrol Trooper Amanda Villa was informed by dispatch that a vehicle was parked off the side of the road on Stallion Ridge Drive with a man inside who would not wake up. At the time, the temperature was eleven degrees below zero. Trooper Villa responded to the scene at approximately 3:30 p.m. to perform a welfare check. Once she got to the vehicle, Trooper Villa could see two dogs and a person, later identified as Wilke, in the backseat of the vehicle. Trooper Villa attempted to wake Wilke up by knocking on the windows, but he did not respond. Trooper Villa then opened the unlocked door and continued to try to wake Wilke by calling to him and rubbing his shoulder. Immediately upon opening the door, Trooper Villa could smell a strong alcoholic odor. Eventually, Wilke responded by mumbling and starting to move. Trooper Villa noticed the keys to the vehicle were still in the ignition, Wilke's eyes were watery and bloodshot, and Wilke's movements were very slow and lethargic. Because of the cold and his condition, Trooper Villa called in medical personnel to check on Wilke.

¶5 Sergeant Robert Kinyon of the Lewis and Clark County Sheriff's Office (LCSO) then arrived on scene and spoke to Wilke. Sergeant Kinyon also noticed a strong alcoholic odor when speaking with Wilke. After Wilke was cleared by the medical personnel, Sergeant Kinyon and Trooper Villa again spoke with Wilke. Wilke claimed he was not

3

driving, did not know how the vehicle ended up in the ditch, stated he was the only person in the vehicle, and he did not know who was driving the vehicle. Due to the weather, Sergeant Kinyon transported Wilke to Birdseye Canyon Creek Fire Hall for field sobriety tests. At the fire hall, LCSO Deputy James Coppola arrived to conduct the tests. Wilke refused to perform field sobriety tests and refused to submit to a breath test. After Deputy Coppola read the informed consent advisory, Wilke refused to submit to a blood test. Deputy Coppola transported Wilke to the detention center and then applied for a search warrant to obtain a blood sample. After the search warrant was granted, Wilke's blood was drawn by medical personnel at approximately 6:30 p.m. Wilke's blood sample was sent to the Montana State Crime Lab, which determined Wilke's blood alcohol content was .304.

¶6     On February 25, 2019, Wilke was charged by Information with felony DUI (fourth offense) in the District Court. The matter went to trial on September 9 and 10, 2019. As relevant to this appeal, the District Court, without objection from Wilke, gave the State's proposed circumstantial evidence instruction at trial. This instruction was identical to a pattern instruction, Model Criminal Jury Instruction 1-117(a), and stated:

> When circumstantial evidence is susceptible to two interpretations, one that supports guilt and the other that supports innocence, the jury determines which is most reasonable.

Wilke proposed an additional special instruction regarding circumstantial evidence, proposed instruction no. 17, which stated:

> In the event that two reasonable interpretations of the circumstantial evidence exist, one that supports guilt and one that supports innocence, you must enter a not guilty verdict. This is so even if one interpretation is more reasonable than the other, and stems from the principle that a defendant is presumed innocent unless and until the State proves guilt beyond a reasonable doubt.

4

The State objected to this instruction, and the District Court, finding it was "not an accurate reflection of either the statute or the law in Montana," refused to give it at trial. The jury convicted Wilke of DUI.

¶7 After being convicted at trial, Wilke filed a Motion to Preclude Use of Prior Convictions to Enhance Sentence and Brief in Support on October 1, 2019. Wilke asserted his first DUI conviction out of Butte-Silver Bow County in 2004 was constitutionally infirm "because he was not advised of his right to assistance of counsel and was unrepresented" and therefore this case should be sentenced as a third-offense misdemeanor DUI, rather than as a fourth-offense felony DUI. Wilke asserted he was simply told by the Butte-Silver Bow court to "pay the fine and have a nice day." The State responded in opposition and notified the District Court it intended to call retired Butte-Silver Bow County Justice of the Peace Debra Williams (Judge Williams) to testify at sentencing.

¶8 At sentencing, Judge Williams testified she did not have a specific memory of handling Wilke's 2004 DUI. Judge Williams testified her procedure when a defendant would appear on a citation was to swear the defendant in and advise the defendant of his/her rights, including the right to an attorney and the right to contest the charge and go to trial, before allowing a defendant to say anything. Judge Williams testified if a defendant wished to enter a plea, she would explain the penalties and ask if the plea was being voluntarily made. Judge Williams testified she followed these procedures in every case. Judge Williams further testified she would never tell a defendant, without advising the defendant of his/her rights, to pay the fine and go home and have a nice day. On cross-examination,

5

Judge Williams testified that, while it was her practice to have a defendant sign a written waiver of rights when pleading guilty in every case, on a rare occasion the written waiver may have been overlooked. The District Court found, based on Judge Williams's testimony, that Wilke's 2004 DUI conviction was a valid conviction. The court sentenced Wilke for a felony DUI to the Montana Department of Corrections (DOC) for 13 months, with a recommendation he be placed at the WATCh program, followed by a five-year suspended DOC sentence.

¶9 Wilke appeals, asserting the District Court abused its discretion by not giving his proposed jury instruction no. 17 and that the District Court erred by allowing his 2004 misdemeanor DUI conviction to be used for sentence enhancement.

¶10 A district court has broad discretion when instructing a jury, which we review for abuse of discretion. *State v. Sanchez*, 2017 MT 192, ¶ 7, 388 Mont. 262, 399 P.3d 886 (citing *State v. Zlahn*, 2014 MT 224, ¶ 14, 376 Mont. 245, 332 P.3d 247). We review jury instructions as a whole to determine whether they fully and fairly instruct the jury on the applicable law. *Sanchez*, ¶ 7 (citing *State v. Kaarma*, 2017 MT 24, ¶ 7, 386 Mont. 243, 390 P.3d 609). Reversible error occurs only when the jury instructions prejudice the defendant's substantial rights. *Kaarma*, ¶ 7.

¶11 We begin with Wilke's claim the District Court abused its discretion by declining to give his proposed special jury instruction no. 17 regarding circumstantial evidence. Wilke argues the District Court's failure to give this instruction impermissibly lowered the State's burden of proof to prove all elements of the crime. The State asserts the jury instructions fully and fairly instructed the jury that the State must prove its case beyond a

reasonable doubt and that Wilke must be presumed innocent until proven guilty. We agree with the State.

¶12    We have reviewed the jury instructions given by the District Court in this case. In addition to the pattern instruction regarding circumstantial evidence noted above, the District Court instructed the jury the State had the burden of proving Wilke was guilty beyond a reasonable doubt; Wilke was presumed to be innocent and that presumption remained throughout every stage of the trial and is not overcome unless the jury is convinced beyond a reasonable doubt; both direct and circumstantial evidence are acceptable and neither is entitled to greater weight than the other; and the elements of driving under the influence which the State was required to prove beyond a reasonable doubt, among other instructions which are not strictly relevant to this issue.

¶13    As we have noted, the District Court gave the pattern instruction regarding circumstantial evidence as jury instruction no. 10. Wilke did not object to the court giving this instruction and we have previously upheld jury instructions containing this exact instruction. *See Sanchez*, ¶¶ 16-20; *State v. Iverson*, 2018 MT 27, ¶ 20, 390 Mont. 260, 411 P.3d 1284. In *Sanchez*, we reiterated this Court "has plainly held that a district court may properly give the circumstantial evidence instruction which is at issue in this case requiring the jury to accept the interpretation of circumstantial evidence they believe is the most reasonable." *Sanchez*, ¶ 17 (collecting cases). We have also "rejected the argument that if two interpretations of circumstantial evidence are equally persuasive, the jury must adopt the one favoring innocence." *Sanchez*, ¶ 17 (citing *State v. Misner*, 2007 MT 235, ¶¶ 39-40, 339 Mont. 176, 168 P.3d 679).

7

¶14 "If the district court's jury instructions, reviewed as a whole, fully and fairly present the law to the jury, then the jury has been properly instructed." *State v. Longstreth*, 1999 MT 204, ¶ 15, 295 Mont. 457, 984 P.2d 157. After reviewing the jury instructions given in this case, it is clear the District Court's instructions fully and fairly presented the law to the jury and that Wilke was not entitled to have his proposed circumstantial evidence instruction given. Wilke's substantial rights were not prejudiced by either the instructions actually given at trial or by the court declining to give his proposed instruction, so there is no reversible error here. *Kaarma*, ¶ 7. The District Court therefore properly instructed the jury and did not abuse its discretion by declining to give Wilke's proposed special instruction no. 17 regarding circumstantial evidence.

¶15 Whether a prior conviction can be used to enhance a criminal sentence is an issue of law, which we review de novo for correctness. *State v. Lund*, 2020 MT 53, ¶ 6, 399 Mont. 159, 458 P.3d 1043 (citing *State v. Krebs*, 2016 MT 288, ¶ 7, 385 Mont. 328, 384 P.3d 98). In determining whether a prior conviction is invalid, a district court may first need to make findings of fact, based on oral and documentary evidence presented by the parties, regarding the circumstances of that conviction and we will not disturb such findings unless they are clearly erroneous. *State v. Rasmussen*, 2017 MT 259, ¶ 10, 389 Mont. 139, 404 P.3d 719 (citing *State v. Maine*, 2011 MT 90, ¶ 12, 360 Mont. 182, 255 P.3d 64). A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Weaver*, 2008 MT 86, ¶ 9, 342 Mont. 196, 179 P.3d 534 (citations omitted).

¶16    We turn now to Wilke's argument his 2004 misdemeanor DUI conviction was constitutionally infirm, and therefore ineligible to be used for sentence enhancement purposes in this case. Wilke presented an affidavit stating he was charged with DUI in 2004; that he could not afford counsel at that time; that he was not represented by counsel and appeared before a judge who said "pay the fine and have a nice day"; that he was not represented by counsel when he paid the fine; that he was not advised of his right to representation by an attorney; and that he was not advised of his right to trial or to otherwise contest the DUI charge.

¶17    "The State may not rely on a constitutionally infirm conviction for sentence enhancement purposes because doing so violates a defendant's due process rights." *State v. Hancock*, 2016 MT 21, ¶ 11, 382 Mont. 141, 364 P.3d 1258 (citing *State v. Hass*, 2011 MT 296, ¶ 14, 363 Mont. 8, 265 P.3d 1221). "[A] rebuttable presumption of regularity attaches to [a] prior conviction, and we presume that the convicting court complied with the law in all respects." *Rasmussen*, ¶ 14 (quoting *Krebs*, ¶ 12). The defendant has the initial burden to demonstrate the prior conviction is constitutionally infirm and once the defendant has done so, the State has the burden to rebut the defendant's evidence. *Maine*, ¶ 33. Ultimately, both the burden of production and the burden of persuasion are on the defendant when attacking the validity of a conviction, and "it is the defendant 'who must prove by a preponderance of the evidence that the conviction is *invalid*.'" *Krebs*, ¶ 12 (quoting *Maine*, ¶ 34) (emphasis in original).

¶18    In response to the allegations made by Wilke in his affidavit, the State called Judge Williams, Butte-Silver Bow County Justice of the Peace at the time of Wilke's 2004 DUI

9

conviction, to testify at sentencing in this case. Judge Williams testified she did not have a specific memory of handling Wilke's 2004 DUI, but her procedure in every case when a defendant would appear on a citation was to swear them in and advise them of his/her rights, including the right to an attorney and the right to contest the charge and go to trial, before allowing a defendant to say anything, and, if a defendant wished to enter a plea, she would explain the penalties and ask if the plea was being voluntarily made. Judge Williams testified she followed these procedures in every case. Judge Williams further testified she would never tell a defendant, without advising the defendant of his/her rights, to pay the fine and go home and have a nice day. Wilke did not testify at the sentencing hearing.

¶19 After listening to the testimony of Judge Williams, the District Court found "the presumption of regularity does attach" and the "2004 [Butte-]Silver Bow conviction's a valid conviction." We find no error in the District Court's conclusion in this case. Wilke put forward an affidavit claiming his conviction was invalid which the State countered through the testimony of Judge Williams. On appeal, Wilke quibbles with the testimony of Judge Williams, seemingly asserting her testimony was not sufficient to overcome his affidavit. "It was 'exclusively within the province' of the District Court to determine [the witness's] credibility, and 'we will not reweigh the evidence or the credibility of witnesses.'" *Rasmussen*, ¶ 16 (quoting *State v. Nixon*, 2012 MT 316, ¶ 21, 367 Mont. 495, 291 P.3d 1154). The District Court found the testimony of Judge Williams regarding her usual process credible, and we will not reweigh its credibility determinations in this case. In addition, we have held "the lack of evidence showing that the prior conviction is valid is not proof, by affirmative evidence, that the conviction is invalid." *State v. Chaussee*,

10

2011 MT 203, ¶ 25, 361 Mont. 433, 259 P.3d 783. Beyond his affidavit, which the District Court apparently found to not be credible in the face of Judge Williams's testimony, Wilke put forth no direct evidence which would lend support to his claim his 2004 DUI conviction was invalid. The District Court did not err by using that conviction to enhance the sentence in this case.

¶20     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶21     Affirmed.


                                        /S/ INGRID GUSTAFSON


We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE